# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2508
_____

Zach Hillesheim,

*Plaintiff - Appellant*,

v.

O.J.'s Cafe, Inc.,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 12, 2020
Filed: August 5, 2020
[Published]

_____

Before COLLOTON and BENTON, Circuit Judges, and WILLIAMS,[1] District Judge.

_____

PER CURIAM.

Zach Hillesheim sued a restaurant, O.J.'s Cafe, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq.* Hillesheim uses

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, sitting by designation.

a wheelchair; as relevant here, he claimed that slopes in the restaurant's parking lot deprived him of full and equal enjoyment of the facility. After the restaurant made improvements to the lot, the district court[2] conducted a bench trial and dismissed Hillesheim's claims as moot. The court found that the slopes at issue no longer posed a threat of ongoing or future harm to Hillesheim. Hillesheim appeals, and we affirm.

Hillesheim visited O.J.'s Cafe in June 2017 and perceived that the access aisle for the accessible parking space was too narrow. He was also concerned about the slope of the parking space and the access aisle. Hillesheim sued the restaurant, alleging among other things that the parking lot did not comply with the ADA Accessibility Guidelines.

The applicable guideline on parking lots provides that "[s]lopes not steeper than 1:48 shall be permitted" in accessible parking spaces and access aisles. ADA Accessibility Guidelines § 502.4. A slope of this ratio is equivalent to an angle of 1.19 degrees. R. Doc. 87, at 93-94. The guidelines also provide that these "dimensions are subject to conventional industry tolerances." Guidelines § 104.1.1. It is undisputed that the industry standard in this case tolerated a variance of 0.5 percent, which allowed an angle of up to 1.48 degrees. R. Doc. 87, at 95, 186-88.

After Hillesheim sued, the restaurant made improvements to the accessible space and access aisle. At Hillesheim's request, Peter Hansmeier then visited the restaurant to inspect the reconfigured areas. Hansmeier took forty-nine measurements of slopes and found that seven slopes in the accessible space and eight slopes in the access aisle exceeded angles of 1.48 degrees. Based on these measurements, Hillesheim continued to argue that the presence of excess slopes created a risk of

---

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

harm to him when he traveled in a wheelchair and prevented him from accessing the restaurant.

The district court proceeded to a bench trial on Hillesheim's claims related to the slopes in the accessible parking space and access aisle. At trial, Hillesheim described the areas of the space and aisle that he would use to remove his wheelchair from the driver's side of the vehicle and to assist his girlfriend who also uses a wheelchair. Hansmeier testified about his measurements, but did not offer an opinion on whether the slopes denied Hillesheim access to the restaurant.

The restaurant's expert, Larry Fleming, testified that a person using a wheelchair is not affected by slopes that are located outside the path of travel or beyond the area where a person would transfer to or from the wheelchair. Having conducted an on-site inspection, Fleming stated that the parking space and access aisle exceeded the minimum width required by the guidelines. He concluded that the remaining slopes in excess of 1.48 degrees were located in areas outside the path of travel for a wheelchair user. Fleming opined that the space and aisle thus met the minimum guideline requirements because the previous barriers to access were removed.

The district court found that although the remaining slopes in excess of 1.48 degrees did not comply with the guidelines, they were not located in areas where Hillesheim would travel. The court thus determined that Hillesheim failed to demonstrate a risk of ongoing or future harm when he returns to dine at the restaurant. Accordingly, the court dismissed the claims as moot. We review a district court's legal conclusions *de novo* and factual findings for clear error.

Under Article III, federal courts have jurisdiction to hear only cases or controversies. To establish a controversy, a plaintiff must demonstrate standing—that is, "a personal injury fairly traceable to the defendant's allegedly unlawful conduct

and likely to be redressed by the requested relief"—and a controversy must exist through all stages of the litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013) (internal quotation omitted). If the issues "are no longer 'live' or the parties lack a legally cognizable interest in the outcome," then there is no controversy and the case is moot. *Id*. at 91 (internal quotation omitted). In the context of the ADA, "permanent physical improvements . . . are sufficient to eliminate a case or controversy if they provide the requested relief." *Davis v. Morris-Walker, LTD*, 922 F.3d 868, 870 (8th Cir. 2019).

Hillesheim asserts on appeal that the district court erred in dismissing his claims as moot. He argues that the noncompliant slopes in the accessible space and access aisle are sufficient to establish a threat of harm and an ongoing case or controversy.

Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities. *See* 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).

Hillesheim's theory at trial was that the presence of slopes in the accessible space and access aisle that exceed the guidelines and industry tolerance showed a risk of ongoing or future harm. But "[a]lleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing." *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018). Although Hillesheim need not traverse the disputed slopes to establish a risk of ongoing or future harm, *id.* at 1011, he cannot seek relief by alleging an ADA violation that would not affect his access to the restaurant. *See Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000).

The district court found that any excess slopes in the parking lot were located in areas that would not interfere with Hillesheim's access to the restaurant. This finding is supported by the record. The expert Fleming testified that the excess slopes were either outside the minimum dimensions for a parking space or aisle, or were not located in places where Hillesheim said that he would unload his wheelchair, transfer to or from his wheelchair, maneuver to assist his girlfriend, or travel to enter the restaurant. As such, Fleming opined that the access aisle and accessible space did not present an architectural barrier that prevented Hillesheim from accessing the restaurant. Hillesheim did not rebut this evidence, and the district court's findings of fact were not clearly erroneous. With Hillesheim left to rely on alleged violations of the ADA that would not affect him, the district court correctly determined that there was no ongoing injury sufficient to establish Article III standing, so the case was moot.

The judgment of the district court is affirmed.

_____